IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ARLEN PORTER SMITH,

        Petitioner,

    v.

JEAN HILL,

        Respondent.

Civil No. 3:05-cv-01900-BR

OPINION AND ORDER

ARLEN PORTER SMITH,

        Petitioner,

    v.

JOHN MYRICK,

        Respondent,

Civil No. 2:15-cv-00738-BR

OPINION AND ORDER

        TONI L. MORO
        19 S. Orange Street
        Medford, OR 97501

        Attorney for Petitioner

1 - OPINION AND ORDER -

ELLEN F. ROSENBLUM
Attorney General
KRISTEN E. BOYD
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301

Attorneys for Respondents

BROWN, Judge.

Petitioner, an inmate at the Snake River Correctional Institution, brings these habeas corpus proceedings challenging decisions of the Oregon Board of Parole and Post-Prison Supervision (the "Board"). Because the cases are procedurally intertwined and share common background facts, the Court addresses both cases in a single Opinion and Order to be filed separately in each case. For the reasons that follow, the Amended Petition for Writ of Habeas Corpus (ECF No. 83) in Case No. 3:05-cv-01900-BR and the Petition for Writ of Habeas Corpus (ECF No. 1) in Case No. 2:15-cv-00738-BR are DENIED.

## BACKGROUND

I.  **Proceedings Before the Board and the State Courts**

   A.  **The Board's Decision to Deny Restoration of Good Time Credits for the 1991 Jackson County Sentence**

In August 1981, a Jackson County judge sentenced Petitioner on convictions for three counts of Burglary in the First Degree to an indeterminate term of 20 years in prison, with a 90-month minimum.[1]

---

[1] In October 1991, a Polk County judge sentenced Petitioner to a 20-year indeterminate term for Burglary in the First Degree. The

On January 19, 1984, Petitioner was released on parole from his 1981 Jackson County sentence. On February 10, 1984, Petitioner was arrested in Marion County on new criminal charges. On March 6, 1984, the Board revoked Petitioner's parole on the 1981 Jackson County sentence based on his new criminal activity in Marion County.

Petitioner was ultimately convicted on December 10, 1984, of the 1984 Marion County offenses. In particular, Petitioner was convicted of two counts of Robbery in the First Degree and one count each of Unauthorized Use of a Vehicle, Kidnaping in the First Degree, and Attempted Kidnaping in the First Degree. The Marion County trial judge sentenced Petitioner as a dangerous offender to an additional 105 years in prison, to run consecutive to the 1981 Jackson County sentence.

At the time Petitioner's parole on the 1981 Jackson County sentence was revoked on March 6, 1984, Oregon law provided as follows:

> (2) When a paroled inmate violates any conditions of parole, no deduction from the term of sentence, as provided in subsection (1) of this section [providing for the deduction of time from an inmate's sentence for good time], shall be made for service by such inmate in the penal or correctional institution prior to acceptance and

Polk County sentence, however, is not pertinent to these proceedings.

release on parole, *except when authorized by the State Board of Parole* upon recommendation of the superintendent thereof.

Or. Rev. Stat. § 421.120(2) (1983) (emphasis added).

The relevant administrative rules then in effect gave the Board unfettered discretion whether or not to restore forfeited good time credit based on the recommendation of the superintendent. Or. R. Admin. P. 291-100-018 (effective 11-4-83) provided, in pertinent part:

> 3. Credit to Parole Violator for Good Time Earned Prior to Parole Release
>
>   a. Upon return from parole, designated staff in the Corrections Division facility to which the parolee is returned, will as quickly as possible prepare a report for the superintendent's signature which will be forwarded by the superintendent to the Parole Board Chairperson with a recommendation for restoration or non-restoration of Good Time credits accrued by the inmate prior to his/her release from parole.
>
>   b. A favorable recommendation will be made if a review of the inmate's file reflects he/she would more than likely have been credited with the Good Time had the individual not been paroled.
>
>   c. *It is the prerogative of the Parole Board to approve or disapprove all recommendations.*

(Emphasis added.) Under Or. R. Admin. P. 255-75-085 (1979):

> (2) At the future disposition hearing, *the Board may*:
>
>   (a) Set a new parole release date according to the guidelines in rule 255-75-085 and *choose* not to give credit for statutory good time earned until suspension of parole; or

> (b) Deny further parole consideration, according
> to the guidelines in rule 255-75-090, and
> return *all or part* of the statutory good time
> to which the prisoner is entitled.

(Emphasis added).

In July 1984, the Board conducted a "future disposition hearing" and, based upon a finding of new criminal conduct in Marion County in February 1984, the Board ordered that Petitioner be re-paroled on his 1981 Jackson County sentence on February 1, 1985, at which time the 1984 Marion County sentence would commence. The Board's order did not address Petitioner's good time credits.

Shortly after Petitioner's return to prison in 1984, the institution superintendent recommended restoration of 334 days of previously earned good time credit toward Petitioner's 1981 Jackson County sentence. It appears from the record that the Board was not aware of this recommendation and, in any event, the Board did not act on it for some years.

In January 2001, before he was aware of the 1984 recommendation for restoration of good time credit for the 1981 Jackson County conviction, Petitioner filed a petition for alternative writ of mandamus in state court seeking an order requiring the superintendent to perform the statutory duty of making a recommendation to the Board on the restoration of good time credits. The trial court dismissed the mandamus proceeding on the state's motion. Petitioner appealed, but the Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court

denied review. *Smith v. Hill*, 195 Or. App. 546, 99 P.3d 1239 (2004), *rev. denied*, 338 Or. 583, 114 P.3d 504 (2005).

While the appeal from the dismissal of the mandamus petition was pending, the superintendent in 2003 issued a new, contrary recommendation that Petitioner's good time credits on his 1981 Jackson County conviction *not* be restored. On June 16, 2003, the Board denied the restoration of good time credits in Board Action Form ("BAF") #7. Petitioner sought administrative review, but on December 19, 2006, the Board issued Administrative Review Response ("ARR") #3 denying Petitioner's request.

Petitioner sought judicial review of the Board's decision set forth in BAF #7. As a result of the judical review of BAF #7 and the discovery of the 1984 DOC memorandum recommending reinstatement of Petitioner's good time credits, the Oregon appellate commissioner granted a Board motion to establish a new due date for a new board order to address the 1984 DOC memorandum. The Board scheduled an administrative review hearing for December 10, 2008, to consider the 1984 memorandum recommending restoration, and to decide whether Petitioner was entitled to the restoration of good time credits. The Board described the purpose of the hearing in BAF #14:

> The purpose of the hearing is to allow offender to present any information that he feels is relevant to whether the Board should return all or part of his statutory good time credits and to give the Board the opportunity to deliberate based on a complete record.

After the hearing, the Board will issue a new BAF regarding restoration of offender's good time credits, which will be subject to administrative and judicial review in the normal course.

For convenience, the board sets out the applicable standard in this order:
> (2) At the future disposition hearing, the Board may:
> (a) Set a new parole release date according to the guidelines in the rule 255-75-085 and choose not to give credit for statutory good time earned until suspension of parole; or
> (b) Deny further parole consideration, according to the guidelines in rule 255-75-090, and return all or part of the statutory good time to which the prisoner is entitled.

To recapitulate, the AR hearing is solely for the Board to consider the 1984 memorandum, as clarified by OISC, and to apply the standard set out [in] OAR 255-75-085 (permanent effective February 1, 1979) [sic].

Resp. Exh. 128, pp. 62-63.

Petitioner appeared at the "administrative review" hearing on December 10, 2008, accompanied by counsel. Following the hearing, the Board denied restoration of the previously forfeited good time credits in BAF #15, stating:

> As explained more fully in Board Action Form (BAF) #14, dated September 15, 2008, the Board scheduled this administrative review (AR) hearing to make a decision on the recently received 1984 memorandum regarding the restoration of offender's good time credit (with the added clarification that 369 days are available for restoration).

> After reviewing the entire record, which includes a positive recommendation of forfeited goodtime credits from 1984, and applying OAR 255-75-085 (permanent effective February 1, 1979) as well as all applicable rules and laws, the Board unanimously denies restoration of forfeited good time credits.

Resp. Exh. 128, p. 491. Petitioner sought judicial review of BAF #15, but the Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. *Smith v. Hill*, 245 Or. App. 504, 260 P.3d 856 (2011), *rev. denied*, 352 Or. 107, 284 P.3d 485 (2012). As a result, Petitioner did not receive additional good time credit against his 1981 Jackson County sentence.

**B.    The 2001 Board Decision Deferring Release on the 1984 Marion County Sentence - Case No. 3:05-cv-1900-BR**

Meanwhile, following Petitioner's conviction on the 1984 Marion County convictions, the Board held an initial prison term hearing setting a parole consideration date for that sentence of September 5, 2001. In preparation for that hearing, Robert Stuckey, Ph.D., prepared a Parole Board Psychological Evaluation on Petitioner dated May 9, 2001, and Frank P. Colistro, Ed.D., completed a psychological evaluation of Petitioner dated June 7, 2001.

On October 16, 2001, the Board conducted a parole consideration hearing at which Petitioner appeared and testified. At the conclusion of the hearing, the Board issued BAF #6, which deferred for 24 months parole consideration for the 1984 Marion County convictions. The Board explained the decision as follows:

> The Board, applying the rules in effect at the time of the commitment offense(s), finds the offender has a mental or emotional disturbance, deficiency, condition, or disorder predisposing offender to the commission of any crime to a degree rendering the offender a danger to the health or safety of others, therefore, the condition which made inmate dangerous is not in remission and

inmate does continue to remain a danger.  The Board would reach the same result under the current rules.

Resp. Exh. 103, p. 4.

Petitioner sought administrative review, which the Board denied in a written decision in ARR #2.  Petitioner then sought judicial review, but the Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review.  *Smith v. Board of Parole*, 199 Or. App. 270, 111 P.3d 248, *rev. denied*, 339 Or. 450, 24 P.3d 609 (2005).

### C. The 2007 Board Decision Deferring Release on Parole from the 1984 Marion County Sentence - Case No. 2:15-cv-00738-BR

Petitioner appeared before the Board regarding his 1984 Marion County convictions on July 18, 2007, for a parole consideration hearing.[2]  Resp. Exh. 102.

Following that hearing, the Board issued Board Action Form ("BAF") #13 deferring for 24 months Petitioner's parole consideration date for these convictions.  Resp. Exh. 102, pp. 4-7. Petitioner sought administrative review, but the Board denied relief on June 15, 2009, in Administrative Review Response ("ARR") #10.  Resp. Exh. 102, pp. 6-7.  Petitioner filed a petition for judicial review, but the Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review.  *Smith v. Board*

---

[2]Petitioner also appeared before the Board in 2003 and 2005 as to these convictions, but the Board decisions following those hearing are not at issue here.

*of Parole*, 245 Or. App. 300, 260 P.3d 201 (2011), *rev. denied*, 352 Or. 170, 285 P.3d 720 (2012). The appellate judgment issued on December 4, 2012. Resp. Exh. 103.

**D.**   **The 2009 Board Decision Deferring Release on Parole on the 1984 Marion County Conviction - Case No. 2:15-cv-00738-BR**

On July 8, 2009, Petitioner again appeared before the Board for another parole consideration hearing related to the 1984 Marion County convictions. Notwithstanding Petitioner's request for subpoenas for records and for personal appearances of witnesses at the hearing, the Board ruled that such subpoenas were not authorized by law. The Board memorialized this ruling in Board Action Form ("BAF") #16. Thereafter, the Board issued BAF #17 deferring for 24 months Petitioner's parole consideration date. Petitioner sought administrative review of both of these actions, but the Board denied relief in ARR #11 and ARR #12. Resp. Exh. 105, pp. 2-5. Petitioner filed a petition for judicial review. The Oregon Court of Appeals affirmed the Board's decision in a written opinion. *Smith v. Board of Parole*, 268 Or. App. 457, 343 P.3d 245 (2015). On July 9, 2015, after Petitioner filed his Petition for Writ of Habeas Corpus in Case No. 2:15-cv-00738-BR, the Oregon Supreme Court denied review. *Smith v. Board of Parole and Post-Prison Supervision*, 357 Or. 550, 357 P.3d 245 (2015).

## II. Federal Habeas Proceedings

On December 20, 2005, Petitioner filed a *pro se* Petition for Writ of Habeas Corpus in *Smith v. Hill*, Case No. 3:05-cv-01900-BR as to his challenges regarding restoration of good time credit from his 1981 Jackson County convictions, his classification as a "dangerous offender," and other parole issues related to those convictions. In it, Petitioner alleged five claims for relief:

**Ground One:** Respondents have wrongfully extended petitioner's term of confinement through the *ex post facto* application of laws.

**Supporting Facts:** Oregon state law in effect at the time of petitioner's crime authorized the suspension of a prisoner's previously earned good time credits upon a prisoner's release on parole but, also required respondent Hill recommend the full restoration of the suspended good time credits upon a prisoner's return to prison as an alleged parole violator if the prisoner would have received the good time credit had he/she not been paroled. Under the prior Oregon law a prisoner's good time credit would be fully restored if the prisoner was not promptly reparoled. Petitioner has been returned to prison as a parole violator and not reparoled. Respondent Hill has refused to recommend the restoration of and restore petitioner's previously earned good time credits. The basis for respondent's action is laws enacted after the commission of petitioner's crime which now require a prisoner save another person's life before any good time credits will be restored.

**Ground Two:** Respondents and the State of Oregon have wrongly denied petitioner Due Process of law under the Fifth and Fourteenth Amendments.

**Supporting Facts:** Both the actions of suspending petitioner's previously earned good time credits and the decision to refuse to restore the suspended good time credits occurred without notice and without a meaningful opportunity to contest these actions. Though ORS 421.120(1)(h) requires respondents enact uniform administrative rules governing the granting, retracting, and restoring of good time credits Oregon prison and

parole officials have not enacted procedures providing prisoners a meaningful opportunity to contest legal errors in granting, retracting, and/or restoring good time credits.

**Ground Three:** Respondents have wrongly extended petitioner's term of confinement through the *ex post facto* application of laws.

**Supporting Facts:** Petitioner was sentenced to an enhanced sentence under Oregon's "Dangerous Offender" statutes. Under the laws in effect at the time of petitioner's crime, a prisoner had to be released on parole on the "parole consideration date" established by the board of parole at the prisoner's initial prison term hearing if when the parole consideration date came an independent evaluation conducted by a psychiatrist in the employ of the Oregon State Hospital indicated that the prisoner was not a "menace to the health or safety of others." Petitioner's established parole consideration date was in July of 2001 but, respondents, through the application of laws enacted after the commission of petitioner's crime, have denied petitioner the independent evaluation petitioner was entitled to under the laws annexed to petitioner's crime and have usurped the authority to determine petitioner's eligibility for release on parole.

**Ground Four:** Respondents have wrongly extended petitioner's term of confinement through the *ex post facto* application of laws.

**Supporting Facts:** Petitioner realleges the facts set forth in the Supporting FACTS section of Ground Three above. Petitioner further asserts that respondents have also applied a more onerous criteria than that annexed to petitioner's crimes to deny petitioner parole. Under the laws annexed to petitioner's crimes, an independent determination had to be made as to whether the prisoner was a "menace to the health or safety of others." Respondents have applied a potentially "dangerous" statutory criteria enacted after the commission of petitioner's crime premised on an evaluation prepared by an employee of the board of parole.

**Ground Five:** Respondents and the State of Oregon have wrongly denied petitioner Due Process of law under the Fifth and Fourteenth Amendments.

**Supporting Facts:** Petitioner realleges the facts set forth in the Supporting FACTS section of Ground Three and four above. Petitioner further asserts that during

petitioner's criminal trial proceedings petitioner moved pursuant to the provisions of ORS 137.079 for an order striking portions of the prepared presentence investigation. The trial court subsequently found that substantial portions of the presentence investigation contained information that was false and granted petitioner's motion. The provisions of ORS 137.079 ban release of information stricken from a presentence investigation to the state board of parole and the state department of corrections. Notwithstanding the grant of petitioner's motion, those portions of petitioner's presentence investigation ordered stricken and/or disregarded were forwarded to, and became part of the files and records of, the board of parole. In response to litigation associated with petitioner's initial prison term hearing the board of parole purged its files of the information ordered stricken. Though the board of parole subsequently purged its files and records of this infomiation the department of corrections did not. In producing the evaluation of petitioner upon which the board denied petitioner release on parole the psychologist in the board's employ relied upon information previously determined to be false in state court proceedings. At petitioner's hearings, the board has denied petitioner all opportunity to cross-examine or otherwise submit questions to the person producing the evaluations used as the sole basis for the denial of parole to petitioner. Respondents have used an evaluation they know to be based on false information to deny petitioner release on parole without allowing a meaningful opportunity to challenge the content of the evaluation.

The Court appointed counsel to represent Petitioner and, on July 25, 2008, the Court granted petitioner's motion to stay the proceedings in Case No. 3:05-cv-01900-BR pending the exhaustion of state remedies related to the 2003 Board decision memorialized in BAF #7, discussed above. As noted, BAF #7 was ultimately superseded by BAF #15 following the December 10, 2008, hearing before the Board, and the Oregon appellate courts upheld the

Board's decision in BAF #15. The appellate judgment issued on August 16, 2012.

On June 14, 2013, Petitioner filed a motion seeking to lift the administrative stay in Case No. 3:05-cv-01900-BR and seeking leave to file an amended petition alleging the five claims from the original petition plus an additional eight claims. Four of the proposed new claims pertained to the December 10, 2008, Board decision denying restoration of Petitioner's good time credits, and the other four pertained to the Board's decisions to deny release on parole in 2007 and 2009. Petitioner also sought to stay the case again, this time pending the conclusion of state court proceedings related to the 2009 Board decision.

The Court noted a split of authority in the Ninth Circuit as to whether the Rules Governing § 2254 cases permit a petitioner to challenge in one federal habeas petition two separate parole decisions related to one judgment of conviction and sentence. The Court also noted that allowing challenges to multiple Parole Board decisions in a single habeas proceeding would present inherent, "mixed petition" problems when the Board issues new decisions while the Petitioner is still in the process of exhausting state remedies as to the earlier Board decision(s). Accordingly, the Court granted Petitioner's motion to lift the stay and the motion for leave to amend the petition to allege the claims pertaining to the restoration of good time credits, but denied the motion to amend

the petition to allege claims pertaining to the 2007 and 2009 Board decisions.

On April 10, 2015, Petitioner filed a First Amended Petition for Writ of Habeas Corpus in Case No. 3:05-cv-1900-BR incorporating the five claim for relief alleged in the original *pro se* Petition. As noted above, the original claims alleged in Grounds One and Two challenged the 2003 decision by the Board in BAF #7 to deny the restoration of good time credits, and Grounds Three, Four, and Five challenged the Board's 2001 decision deferring release. The Amended Petition also added the four additional claims allowed by the Court, as follows:

> **Ground Five:** Petitioner was denied due process under the Fourteenth Amendment when the Board failed to provide any reasons for its denial of the restoration of good time credits and failure to re-parole petitioner effective February 2005.

> **Ground Six:** The Parole Board's 2003 and 2008 denial of petitioner's good time credit and Board's failure to re-parole petitioner effective February 2005, violated the federal *ex post facto* clause and the federal due process clause. Regarding the due process violation, among other things, the decision was a vindictive response to petitioner's efforts to seek remedies. And the Parole Board's refusal to allow petitioner to subpoena and pose questions to witnesses regarding the calculation of petitioner's good time discharge date and the two recommendations deprived petitioner of a fair hearing, reasonable notice and a meaningful opportunity to be heard.

> **Ground Seven:** The Parole Board's failure to re-parole petitioner in February 2005, violated the federal *ex post facto* clause and the federal due process clause.

> **Ground Eight:** The Parole Board's 2003 and 2008 failure to re-parole petitioner effective February 2005 or to

15 - OPINION AND ORDER -

restore his good time credit, violated petitioner's First Amendment rights to free speech and access to the courts.

Respondent argues the claims alleged in Grounds One, Two, Five, Six, Seven, and Eight are procedurally defaulted. In addition, Respondent argues that to the extent the Court finds the claims alleged in Grounds One, Five, and Six were fairly presented to the highest state courts as federal claims, relief on these claims was denied in decisions which are not contrary to or an unreasonable application of clearly established federal law and, as such, are entitled to deference. Finally, although Respondent concedes the claims alleged in Grounds Three, Four, and Five are fully exhausted, Respondent nevertheless asserts that the state court's denial of these claims are entitled to deference.

On April 30, 2015, Petitioner filed his counseled Petition for Writ of Habeas Corpus in Case No. 2:15-cv-00738-BR, alleging five grounds for relief challenging the Board's 2007 and 2009 decisions to defer Petitioner's parole release date on his 1984 Marion County conviction:

> **Ground One:** Petitioner was denied his First Amendment right to free speech and Due Process pursuant to the Fourteenth Amendment when the Parole Board denied parole in 2007 based upon Petitioner's conduct which questioned the validity of the evaluation and testing process.

> **Ground Two:** Petitioner was denied due process pursuant to the Fourteenth Amendment when the Parole Board denied parole in 2007 based upon unreliable evidence and when it denied Petitioner's request to call and question witnesses on the factual issue.

**Ground Three:** The Parole Board violated the *ex post facto* clause of the federal constitution when it denied parole in 2007 and 2009 based upon a subsequently enacted standard that allowed Board psychologists to provide them mental health evaluation when the applicable standard required Oregon State Hospital psychiatrists to conduct the evaluation and when the applicable standard required a more exacting substantive standard.

**Ground Four:** Petitioner was denied due process pursuant to the Fourteenth Amendment and his right to free speech under the First Amendment when the Parole Board denied parole in 2009 based upon his request that the psychological evaluation be monitored or recorded.

**Ground Five:** Petitioner was denied due process pursuant to the Fourteenth Amendment when the Parole Board denied parole in 2009 without allowing petitioner to call and question witnesses. The Board is not merely charged with making a prediction about whether the inmate will succeed on parole. In parole consideration proceedings in Oregon, the Board is charged with administering the second step in the sentencing process. As a result, the right to call and question witnesses is necessary under *Mathews v. Eldridge*, 424 U.S. 319, 332, 335 (1976) (the process due in a particular situation depends upon the need to serve the purpose of minimizing the risk of error). Moreover, the Board may not ignore the process the state adopted to minimize the risk of erroneous decisions related to parole release for dangerous offenders. The state granted the right to call witnesses and the ability to effectuate that right through attorney-issued subpoenas. The Parole Board's blanket refusal to allow questioning of the report writers in these proceedings violates due process.

Respondent argues the claims alleged in Grounds One, Two, and Three against the 2007 Board decision are untimely and that Petitioner has not fully exhausted the claims alleged in Grounds Three, Four, and Five against the 2009 Board decision.

I.  **Denial of Good Time Credit Restoration on the 1981 Jackson County Sentence - Case No. 3:05-cv-01900-BR**

  A.  **Failure to Re-Parole Petitioner in 2005[3]**

In Grounds Five through Eight, Petitioner alleges, *inter alia*, that the Board violated Petitioner's *ex post facto* and due process rights when it failed to re-parole Petitioner effective February 2005 pursuant to the Board's decisions on the restoration of good time credits in 2003 and 2008. The Board's 2008 decision set forth in BAF #15, however, was limited to the issue of restoration of good time credits. Moreover, on judicial review, Petitioner's challenge was likewise limited; he asserted the denial of restoration of good time credits was an *ex post facto* violation and due process violation, and he challenged the Board's refusal to allow him to subpoena and examine witnesses about his sentence calculations. Petitioner did not address the failure to re-parole Petitioner in 2005, indeed to do so would have proved futile as the issue was not preserved before the Board.

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(d)(1). A state prisoner satisfies

---

[3]Because the claims alleged in Grounds One and Two of the original petition were ultimately subsumed by the Claims alleged in Grounds Five and Six in Case No. 3:05-cv-01900-BR, the Court does not address those claims separately.

the exhaustion requirement by "fairly presenting" his claim to the appropriate state courts at all appropriate stages afforded under state law. *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Carrillo-Carrillo v. Coursey*, 823 F.3d 1217, 1220 (9th Cir. 2016); *Casey v. Moore*, 386 F.3d 896, 915-16 (9th Cir. 2004). If the petitioner procedurally defaults his available state remedies, habeas relief is precluded absent a showing of cause and prejudice, or that the failure to consider the defaulted claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

To the extent Petitioner's claims in Grounds Five through Eight challenge the Board's failure to issue a ruling in BAF #15 to re-parole Petitioner in 2005, they are procedurally defaulted because Petitioner did not fairly present them in his administrative review request to the Board or on judicial review of the Board's decision. He cannot now do so because the time for filing an administrative review request and judicial review has expired. Moreover, Petitioner has not made any showing of cause and prejudice or a fundamental miscarriage of justice to excuse his procedural default, and, therefore, habeas relief is precluded as to these claims.

**B. Due Process Violation for Failure to Explain Board Decision**

In Ground Five of Case No. 3:05-cv-01900-BR, Petitioner alleges the Board denied his due process rights when it failed to provide any reasons for its denial of restoration of good time credits in BAF #15. In order for Petitioner to establish that the Board's denial of restoration and the state appellate court decisions upholding that denial were "contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court," Petitioner must show that there is clearly established Supreme Court law on the issue presented. *Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006), *overruled on other grnds by Daire v. Lattimore*, 812 F.3d 766 (9th Cir. 2006).

The Court notes neither party discusses the claim alleged in Ground Five with any particularity. Respondent simply states the Board provided Petitioner with a sufficient statement of why his good time credits were not restored, citing *Swarthout v. Cooke*, 562 U.S. 216, 131 S. Ct. 859, 862-63 (2011), in which the Supreme Court held that in the parole release context, a prisoner is entitled to no more than an opportunity to speak at the parole hearing and to be provided a statement of the reasons why parole was denied. Petitioner, for his part, cites cases involving the revocation of good time credits in disciplinary proceedings. Neither standard, however, applies here.

At the time Petitioner's parole was revoked in 1984, Oregon law required pre-parole good time credits to be forfeited automatically upon the violation of the terms of parole unless, as already noted, the superintendent recommended restoration and the Board agreed. *See also Ventris v. Maass*, 99 Or. App. 85, 89, 781 P.2d 1224 (1989) ("[p]re-parole good time is not . . . a 'vested right,' but may be lost by violating a condition of parole"), *rev. denied*, 309 Or. 231, 781 P.2d 1224 (1990). Thus, under the administrative rules implementing the statute, restoration of good time credits was wholly within the discretion of the Board upon a favorable recommendation of the Superintendent.

Petitioner relies on *Wolff v. McDonnell*, 418 U.S. 539 (1974) and similar decisions addressing the situation where an inmate who has been granted a statutory right to good-time credit faces forfeiture of that right for serious misbehavior. When state law creates a liberty interest in the retention of good time credits, it is well settled the inmate is entitled to due process protections including a written statement by the factfinders as to the evidence relied upon and the reasons for the action which is sufficient to permit an individual to understand why the government acted as it did. *Wolff*, 418 U.S. at 557; *see also Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970).

In contrast to the cases Petitioner cites, however, he automatically lost his good-time credits under state law when he

violated the terms of his parole. The relevant question, then, becomes whether Petitioner had any state-created liberty interest in the subsequent *restoration* of those credits as opposed to their forfeiture.

As noted, the statutory decision to restore good-time credits upon revocation of parole is wholly within the discretion of the Board. While Petitioner argued to the contrary before the Board and the Oregon appellate courts, *i.e.*, that restoration of Petitioner's good time credit was mandatory, these bodies rejected that argument. As such, Petitioner has no state-created liberty interest in the restoration of credits. *See, e.g., White v. Schriro*, Case No. CV 05-32312-PHX-FJM, 2007 WL 2410335, at *7 (D. Ariz. Aug. 21, 2007) (Arizona release credit statutory scheme conferring considerable discretion on the Department of Corrections eliminated any state-created liberty interest, distinguishing it from *Wolff*), *aff'd* 377 Fed.Appx. 618 (9th Cir. 2010); *see also Olim v. Wakinekona*, 461 U.S. 238, 249 (1983) (Hawaii prison regulations which placed no substantive limitations on official discretion thus created no liberty interest entitled to protection under the Due Process Clause). Accordingly, the Court concludes Petitioner is not entitled to the due process protections applicable to revocation of good time credits described in *Wolff*, or to those applicable to parole release determinations described in *Swarthout*.

For these reasons, the Court concludes that the Board's denial of restoration of good time credits and the state appellate court decisions upholding that determination were neither contrary to nor an unreasonable application of clearly established federal law as determined by the United States Supreme Court. Because Oregon law conferred unfettered discretion on the Board to determine whether to restore good time credits which were automatically forfeited upon the violation of terms of parole, Petitioner had no liberty interest in the restoration of those credits. Accordingly, Petitioner is not entitled to habeas corpus relief on the claim alleged in Ground Five.

### C. *Ex Post Facto* Violation Base Upon Denial of Restoration of Good Time Credits

In Ground Six of Case No. 3:05-cv-01900-BR, Petitioner alleges the Board violated his rights under the *Ex Post Facto* Clause when it refused in BAF #15 to restore the good time credits forfeited when he violated the terms of his parole in 1984. In his memorandum to this Court in support of Ground Six, Petitioner largely reiterates the argument he presented to the Oregon Court of Appeals that the laws annexed to Petitioner's offense unambiguously *mandated* the restoration of Petitioner's previously accrued good time credits. As discussed above, however, the statutory scheme in effect at the time of Petitioner's offense and parole violation afforded the Board wide discretion and restoration was not mandated. The state appellate courts' decision to affirm the

Board's order is, therefore, supported by the law in effect at the time and does not represent an *ex post facto* violation.

The Court notes Petitioner also argued to the Oregon Court of Appeals that Department of Correction rules required the DOC to make a positive recommendation for the restoration of good time credits, and that the DOC improperly applied a 1996 rule to issue the 2003 memorandum recommending against restoration of the credits. As noted above and as argued by Respondent to the Oregon Court of Appeals, the Board ultimately disregarded the 2003 memorandum and acted instead on the 1984 memorandum. At the 2008 hearing which culminated in the issuance of BAF #15, the Board properly considered the 1984 memorandum, applied Or. R. Admin. P. 255-75-085, and the Board determined that in accordance with all the applicable rules and laws, restoration of forfeited good time should be denied. The Court concludes this determination did not violate the *Ex Post Facto* Clause, and the Oregon court decisions affirming the Board were not contrary to or an unreasonable application of clearly established federal law.

### D.   Due Process Violation for Failure to Allow Petitioner to Subpoena and Question Witnesses

Finally, also in Ground Six of Case No. 3:05-cv-01900-BR, Petitioner alleges the Board violated his due process rights when they refused to allow Petitioner to subpoena witnesses to the December 10, 2008, hearing to question them about the calculation of Plaintiff's good time credits. As discussed above, however,

24 - OPINION AND ORDER -

because Plaintiff did not a have state-created liberty interest in the restoration of his good time credits, the refusal to allow him to subpoena and question witnesses at the hearing did not violate his due process rights.

## II. 2001 Board Decision Deferring Release on 1984 Marion County Sentence - Case No. 3:05-cv-01900-BR

### A. *Ex Post Facto* Violation Based Upon Board's Reliance on Contract Psychologists

In Ground Three of Case No. 3:05-cv-01900-BR, Petitioner alleges the Board violated the *Ex Post Facto* Clause when it relied upon contract psychologists rather than a psychiatrist employed by the Oregon State Hospital to perform parole consideration evaluations before the October 2001 hearing to determine Petitioner's parole release eligibility on the 1984 Marion County sentence.

Petitioner committed the crimes resulting in his dangerous offender sentence in early 1984. At that time, Oregon law required that a dangerous offender be given "a complete physical, mental and psychiatric examination by a psychiatrist appointed by the Superintendent of the Oregon State Hospital" before a parole consideration hearing. Or. Rev. Stat. § 144.226(1) (1983). In addition, the statute directed the examining psychiatrist to determine whether "the convicted person has any mental or emotional disturbance or deficiency or condition predisposing the person to the commission of any crime to a degree rendering the examined

person a menace to the health or safety of others." Or. Rev. Stat. § 114.228(2) (1984). The appointed examining psychiatrist was also required to include in the report "any other information which the examining psychiatrist believes will aid the State Board of Parole in determining whether the examined person is eligible for release" and "the report shall also state the progress or changes in the condition of the examined person as well as any recommendation for treatment." Or. Rev. Stat. § 144.226(2) (1984).

In 1991, the Oregon Legislature amended § 144.226 to authorize the Board to hire its own psychologists to produce and submit the report previously required from the appointed Oregon State Hospital expert. The new law provided that before a parole release hearing, a person sentenced as a dangerous offender must be "given a complete mental and psychiatric or psychological examination by a psychiatrist or psychologist appointed by the [Board]." Or. Rev. Stat. § 144.226(1) (1991). The examining psychiatrist or psychologist was then required to "file a written report or findings and conclusions relative to the examination[.]" Petitioner argues that the change in law disadvantaged him because the statute in effect at the time he committed his crimes promised medical diagnosis and a prescription for treatment, that the Board appointed psychologists were not impartial, and that the evaluators were no longer required to be medically trained but instead doctorally educated evaluators.

To establish an *ex post facto* claim, Petitioner must show that the Board's retroactive application of § 144.226(1) "created a 'sufficient risk' of increasing the punishment attached to [petitioner's] crimes." *Himes v. Thompson*, 336 F.3d 848, 854 (9th Cir. 2003) (citing *Weaver v. Graham*, 450 U.S. 24, 29, (1981) and *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 509 (1995)); *see also Gamer v. Jones*, 529 U.S. 244, 251 (2000) (a retroactive procedural change violates the *Ex Post Facto* Clause when it "creates a significant risk of prolonging [an inmate's] incarceration."). A "speculative" or "attenuated" risk of prolonged incarceration is insufficient to establish a violation of the *Ex Post Facto* Clause. *Morales*, 514 U.S. at 509. "Changes in the law that are merely procedural will withstand scrutiny." *Brown v. Palmateer*, 379 F.3d 1089, 1093 (9th Cir. 2004).

The Board rejected Petitioner's *ex post facto* claim based upon his failure to show that the use of a psychologist rather than a psychiatrist to examine Petitioner was somehow more onerous to Petitioner's position. Resp. Exh. 103, p. 8. Petitioner has not shown this decision is contrary to or an unreasonable application of clearly established federal law and is entitled to deference. Indeed, the Court concludes the change in law was procedural, and at most, any risk of prolonged incarceration is wholly speculative and attenuated. Accordingly, Petitioner is not entitled to relief on the claim alleged in Ground Three.

**B. *Ex Post Facto* Violation Based Upon Board's Reliance on Later Enacted Standard to Defer Parole Consideration**

In Ground Four of Case No. 3:05-cv-01900-BR, Petitioner alleges the Board committed an *ex post facto* violation when it relied upon a standard other than the one in effect in 1984 to defer Petitioner's parole consideration date. As noted, at the time Petitioner committed the crimes resulting in his dangerous offender sentence, Oregon law required the examining psychiatrist to opine whether "the convicted person has any mental or emotional disturbance or deficiency or condition predisposing the person to the commission of any crime to a degree rendering the examined person *a menace* to the health and safety of others." Or. Rev. Stat. § 144.226(2) (1983) (emphasis added). When Petitioner's examination before the 2001 hearing took place, the new law required the examining psychiatrist or psychologist to report whether "the convicted person has any mental or emotional disturbance, deficiency, *or disorder* predisposing the person to the commission of any crime to a degree rendering the examined person a *danger* to the health or safety of others." Or. Rev. Stat. § 144.226(2)(2001) (emphasis added).

Petitioner argues applying the new standard of "danger" instead of "menace" stripped out the objective ability of a dangerous offender to obtain parole release because any personality disorder could be said to present a danger to the public. Again, however, the Court concludes any risk of prolonged incarceration as

a result of this change in language is wholly speculative and attenuated. Likewise, the Board rejected this argument in the Administrative Review Response, a decision the Oregon appellate courts affirmed. Petitioner has not established this was a decision that was contrary to or an unreasonable application of clearly established federal law.

### C. Due Process Violations

In Ground Five of Case No. 3:05-cv-01900-BR, Petitioner alleges due process violations when the appointed psychologists relied on information stricken from the presentence investigation report and when the Board did not allow Petitioner to cross-examine the evaluators. Where state law creates a liberty interest in parole, the Supreme Court has held that "the Due Process Clause requires fair procedures for its vindication—and federal courts will review the application of those constitutionally required procedures." *Swarthout*, 131 S. Ct. at 862. The procedures required to satisfy due process requirements in the parole context, however, are minimal, and include only an opportunity to be heard and provision of a statement of the reasons why the parole was denied. *Id.* (citing *Greenholtz v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1, 16 (1979)). Further, "[b]ecause the only federal right at issue is procedural, the relevant inquiry is what process [the petitioner] received, not whether the state court decided the case correctly." *Id.* at 863 (emphasis supplied).

Assuming without deciding here that Oregon law creates a liberty interest in parole, Petitioner received at least the minimal amount of required process: the Board provided Petitioner with a copy of the examining psychologists' written reports before the parole hearing, Petitioner was allowed to present evidence and argument before and at the hearing, and the Board notified Petitioner in writing of the reasons why his parole release date was deferred.

On this record, the Court concludes the Board did not violate Petitioner's rights under the Due Process Clause, and the decision denying his release on parole was not contrary to or an unreasonable application of clearly established federal law. Accordingly, Petitioner is not entitled to habeas corpus relief under 28 U.S.C. § 2254.

### III. 2007 and 2009 Board Decisions Deferring Release on 1984 Marion County Sentence - Case No. 2:15-cv-00738-BR

In Case No. 2:15-cv-00738-BR, Respondent contends that Petitioner's challenges to the 2007 Board decision are untimely under 28 U.S.C. § 2244(d), which provides a one-year statute of limitations for habeas corpus petitions filed pursuant to 28 U.S.C. § 2254. Petitioner counters that because he attempted to file his claims in *Smith v. Hill*, Case No. 3:05-cv-01900-BR within a year of the exhaustion of his claims against the Board's refusal in 2008 to reinstate good time credits, the claims against the 2007 Board decision should be considered timely. Petitioner also argues that,

to the extent his claims against the 2007 Board decision are "technically late," such untimeliness was caused either by this Court or by error on the part of Petitioner's federal habeas counsel. In any event, Petitioner argues that such error should be excused under the cause and prejudice doctrine, equitable tolling doctrine, and/or the protective petition doctrine.

"Although a procedural issue such as the statute of limitations should ordinarily be resolved first, the statute of limitations is not jurisdictional, and 'judicial economy sometimes dictates reaching the merits [of a claim] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated.'" *Soto v. Ryan*, 2015 WL 10761165, at *3 (D. Ariz. Dec. 24, 2015) (quoting *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999)). Here, the Court finds it is more efficient to resolve first Petitioner's claims against the 2007 Board decision on the merits rather than to address the complex statute of limitations issue as a preliminary matter.

The Court notes Respondent also argues that the claims alleged in Grounds Three, Four, and Five of Case No. 3:15-cv-00738-BR against the Board's 2009 decision were not fully exhausted at the time Petitioner filed his Petition for Writ of Habeas Corpus in this action and, therefore, the Court should deny those claims. Although Petitioner does not directly address Respondent's exhaustion argument, the Court concludes it need not address the

exhaustion issue because Petitioner is not entitled to relief on the merits of his claims against the 2009 decision in any event. *See* 28 U.S.C. § 2254(b)(2) ("[a]n application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant exhaust the remedies available in the courts of the State").

**A.    *Ex Post Facto* Claims Against the 2007 and 2009 Board Decisions**

In Ground Three of Case No. 3:15-cv-00738-BR, Petitioner alleges the Board violated the *Ex Post Facto* Clause in 2007 and again in 2009 by deferring parole on his 1984 Marion County conviction based upon a later-enacted standard that allowed Board psychologists to provide the mental health evaluation when the standard in effect at the time of Petitioner's crimes required a psychiatrist appointed by the Oregon State Hospital to conduct the evaluation and when the applicable standard required a more exacting substantive standard. As discussed above, this Court rejected the identical claim against the Board's 2001 decision deferring release on Petitioner's 1984 Marion County conviction. For those same stated reasons, Petitioner is not entitled to habeas corpus relief against the 2007 and 2009 Board decisions.

**B.    Due Process Claims Against the 2009 Board Decision**

In Grounds Four and Five of Case No. 3:15-cv-00738-BR, Petitioner argues the Board denied him due process and First Amendment rights when it issued the 2009 deferral order based upon

his request that the psychological evaluation be monitored or recorded and based upon the denial to allow Petitioner to call and question witnesses. In its written opinion, the Oregon Court of Appeals first determined that state law did not provide a basis for Petitioner to subpoena witnesses for a parole consideration hearing, a determination which is not subject to federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

The Oregon Court of Appeals, nevertheless, went on to reject Petitioner's Fourteenth Amendment due process claims. The court first recited the current test for determining what process is due for a parole release hearing under the Fourteenth Amendment as announced by the Supreme Court in *Swarthout*: a petitioner with a state-created liberty interest in parole "'received adequate process when he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied.'" *Smith*, 268 Or. App. at 469 (quoting *Swarthout*, 131 S. Ct. at 862) (additional internal quotations omitted). Applying this standard, the Oregon Court of Appeals held:

> Assuming, without deciding, that Oregon has created a liberty interest in petitioner's parole, we conclude that, under the holding of *Swarthout*, the ability to subpoena witnesses is not a requirement for a constitutionally adequate parole consideration hearing under ORS 144.228. Accordingly, the board did not violate petitioner's due process rights under the Fourteenth Amendment when it quashed the subpoenas and

> deferred petitioner's parole consideration for another
> two years.

*Id*. This Court concludes the Oregon Court of Appeals' decision that Petitioner received all of the process due under the Fourteenth Amendment was not contrary to or an unreasonable application of clearly established federal law.

Finally, although Petitioner also alleges violation of his First Amendment rights with respect to Ground Four, Petitioner does not cite any clearly established federal law on the interplay of First Amendment freedom-of-speech rights with due process rights in the context of a parole release hearing. To the extent Petitioner raised this claim in his petition for judicial review, the Court notes the Oregon Court of Appeals declined to address this argument. *See Smith*, 268 Or. App. at 469 n.16 ("[w]e reject petitioner's other contentions without published decision"). Because Petitioner has not demonstrated that the decision was contrary to or an unreasonable application of clearly established federal law, the Court concludes Petitioner is not entitled to habeas corpus relief on the claims alleged in Grounds Four and Five against the Board's 2009 decision deferring parole release.

### C.  Due Process Claims Against the 2007 Board Decision

In Ground One of Case No. 3:15-cv-00738-BR, Petitioner alleges the Board denied him his First Amendment right to free speech and Due Process pursuant to the Fourteenth Amendment when the Board denied parole in 2007 based upon Petitioner's conduct which

questioned the validity of the evaluation and testing process. In Ground Two, he alleges the Parole Board denied him due process in 2007 when it deferred his parole based upon unreliable evidence and when it denied Petitioner's request to call and question witnesses on the factual issues.

As discussed above, the only process to which Petitioner was due in connection with his parole release hearing was the opportunity to be heard and a statement of the reasons why release was not granted. *Swarthout*, 131 S. Ct. at 862. Petitioner received that process as evidenced by the Board's explanation in BAF #13 and ARR #10. Accordingly, the Court concludes Petitioner is not entitled to habeas corpus relief on the claims alleged in Grounds One and Two against the Board's 2007 decision.

## CONCLUSION

For these reasons, the Court **DENIES** the Amended Petition for Writ of Habeas Corpus (ECF No. 83) in Case No. 3:05-cv-01900-BR and the Petition for Writ of Habeas Corpus (ECF No. 1) in Case No. 3:15-cv-00738-BR, and **DISMISSES** these actions.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

The Court **DENIES** a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this ___12___ day of September, 2017.

_____
ANNA J. BROWN
United States Senior District Judge